UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>**JEFFREY DAVID VOSIKA,**<br><br>                                  Debtor. | C/A No. 13-03671-jw<br><br>(1) ORDER SUSTAINING OBJECTION TO CLAIM,<br>(2) ORDER DENYING OBJECTION TO CONFIRMATION,<br>AND (3) ORDER CONFIRMING PLAN<br><br>Chapter 13 |

This matter comes before the Court on Confirmation of the Debtor's Chapter 13 Plan, Estacia Vosika's (hereinafter "Creditor" or "Ms. Vosika") Objection to the Plan, and the Chapter 13 Trustee's Objection to the Claim of Creditor, with the Debtor's Joinder and Creditor's Reply thereto.

Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to contested matters by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law:

FINDINGS OF FACT

1.    The Debtor and Ms. Vosika were once husband and wife, separated after approximately nine (9) years of marriage, with one child born of the marriage.  The parties subsequently entered into a Separation and Property Settlement Agreement on April 28, 2011 ("Separation Agreement").

2.    The Separation Agreement provides that the Debtor would retain possession of the marital residence in Midland, NC ("the Property"), but that "[the Debtor] shall take all reasonable efforts to refinance debts tied to the residence or have [Ms. Vosika's] name removed

from these debts by no later than December 31, 2011.  If [the Debtor] is unable to refinance the debts tied to the residence or have [Ms. Vosika's] name removed from these debts by December 31, 2011, he shall immediately place the marital residence for sale." *Separation and Property Settlement Agreement,* ¶ 2.4, page 8 (signed in Mecklenburg County, NC, April 28, 2011).

    3.    The Settlement Agreement specifically outlines the terms of marketing the Property, allowing reductions of price by increments, without direction as to the possibility of selling the property for less than the amounts owed.  It further required Ms. Vosika to convey her interest in the Property to the Debtor by Special Warranty Deed, which was timely done by Ms. Vosika.  The Property is currently titled solely in the Debtor's name, but the Debtor and Ms. Vosika are jointly obligated on the two notes secured by the mortgages on the Property.

    4.    On October 26, 2011, the Mecklenburg County, NC, family court entered a Consent Permanent Child Custody and Child Support Order ("Support Order"), requiring the Debtor to pay Ms. Vosika monthly child support and pay certain other expenses of the minor child of the marriage. On May 3, 2012, the Dekalb County, Illinois family court filed a Judgment for Dissolution of Marriage ("Divorce Order").  The Divorce Order incorporated the terms of the Separation Agreement and the Support Order.

    5.    On August 1, 2012, an Order was entered by the family court in Illinois, brought before the Court upon a Rule to Show Cause and a Petition to Impute Income, both initiated by Ms. Vosika.  The Order found the Debtor to be in indirect civil contempt of court for his failure to pay the mortgages, sell or refinance the Property.  The Debtor was sentenced to six months in jail, stayed pending his compliance with the Order which required payment to Ms. Vosika for arrears and attorney's fees in a specified amount.  The Order further required the Debtor to continue to pay, refinance or sell the Property pursuant to the Settlement Agreement.  The issue

of imputed income and other issues relating to support and visitation were set for later hearing.

6. On September 10, 2012, an Order was entered by the family court in Illinois, denying Ms. Vosika's motion to impute income, and granting the Debtor's motion to reduce child support ("Support Order 2"), but continuing the remaining matters to a later hearing.

7. On October 3, 2012, an Agreed Final Order ("Final Order") was entered by the family court in Illinois, resolving the remaining issues regarding child support and visitation, and altering the terms of Support Order.

8. On October 4, 2012, a Uniform Order for Support ("Uniform Order") was entered by the family court in Illinois, setting forth the amount to be paid by the Debtor biweekly in the amount of $385 for child support and $25 for health insurance for the minor child.

9. On February 1, 2013, an Agreed Order ("Agreed Order") was entered by the family court in Illinois which modified the terms of the Final Order to specify that "No short sale is permitted. The sale must be funded in full to close/sell."

10. The Debtor actively marketed the Property, listing it with a realtor approved by Ms. Vosika. A contract for sale was negotiated in mid-2013, but the sale price was less than the mortgage balances owed, requiring the Debtor, or someone acting on his behalf, to pay more than $30,000 at closing to pay in full the mortgages on the Property. The Debtor's funding fell through and the closing did not take place.

11. The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on June 25, 2013.

12. The Debtor filed his Chapter 13 Plan on July 12, 2013, which provided for the surrender of the Property, but the Debtor continued his efforts to sell the Property. The Plan also treated Ms. Vosika as a domestic support creditor and provided payments to her in the amount of

$44 monthly for past due child support and court ordered attorney's fees.  Ms. Vosika received notice of the Plan and timely objected to it.

13. The Debtor attended his First Meeting of Creditors on July 23, 2013.

14. Ms. Vosika filed a Motion for Relief from Stay on July 23, 2013, asking that the automatic stay be lifted to enable her to return to the family court to enforce that court's order holding the Debtor in contempt for his failure to sell or refinance the Property.  The Debtor objected to the Motion for Relief from Stay and the matter was resolved via Consent Order entered September 4, 2013, modifying the stay for the limited purpose of allowing the Debtor to market the Property for an amount less than the combined mortgages on the property and imposing certain requirements upon the Debtor, including that "the sale of the property will not be completed if Ms. Vosika is to remain personally liable for any remaining debt or deficiency." *Consent Order for Partial Relief from Stay*, ¶ 3 (Bankr. D.S.C. filed September 4, 2013) ("Consent 362 Order").

15. On August 9, 2013, Ms. Vosika filed an Objection to Confirmation indicating that the Debtor's plan was filed in bad faith.

16. An amended Chapter 13 Plan ("2nd Plan") was filed on August 29, 2013.  The plan payment was slightly increased to allow for claims as filed, and to provide treatment for a claim scheduled as unsecured, but filed as secured, but with no changes to the treatment for Ms. Vosika.

17. The Debtor's initial Confirmation Hearing, scheduled for September 5, 2013, was continued to October 3, 2013, to allow time for the parties to attempt to reach a resolution of all issues.  No agreement was reached, and Ms. Vosika filed an Objection to Confirmation of the 2nd Plan on September 26, 2013.  The parties filed a proposed joint statement of dispute on October

4

2, 2013 for a hearing on October 17, 2013.

18. On October 17, 2013, extensive testimony regarding the Objection to Confirmation was heard regarding the issues raised by Ms. Vosika as to the bad faith of the Debtor in filing the petition and schedules, and the feasibility of the plan, including the following:

*Pre-petition contract for sale of the subject property*

a. Ms. Vosika testified that she believed that the Debtor did not act in good faith in handling a pre-petition contract for sale of the Property which subsequently did not close, such that his subsequent filing and his plan were not offered in good faith. On cross examination, however, she conceded that she knew of nothing different that could be done to market the Property.

b. The Debtor testified that he had no credit and no money, having depleted his funds attempting to service the mortgage debt against the Property, so that he was relying on his stepfather to pay the shortfall at closing. After the contract was negotiated, but before the closing could take place, his stepfather indicated that he was either unwilling or unable to pay the funds of more than $30,000 at closing, and the lack of funding caused the closing to fall through.

c. The Debtor testified that he filed the chapter 13 because he was convinced that Ms. Vosika was intending to file a family court action to seek to hold him in contempt for not complying with his family court agreement, which would likely result in incarceration as indicated in the August 1, 2012 Order.

*Accuracy and truthfulness of the Schedules*

a. Ms. Vosika alleged that the Debtor had not listed a debt owed to his stepfather

5

      in the schedules. By affidavit, the Debtor's stepfather indicated that he did not expect repayment of the funds advanced. The Debtor testified that he did not believe that he needed to list his stepfather as a creditor in the schedules.

b. Ms. Vosika alleged that the Debtor did not disclose all assets, including a coin collection, a John Deere Tractor, and a deck mower. The Debtor testified that he had no coin collection and that he had filed an amended Statement of Financial Affairs to disclose the transfer of the John Deere for adequate consideration and an amended Schedule B to disclose the deck mower, which was broken down. The Debtor's testimony as to the reasons for the failures to initially disclose was credible, and the amendments to the Schedules and Statements showed that the property had no liquidation value to the estate.

c. Ms. Vosika claimed that the Debtor did not accurately state the amount of child support in the schedules. The Debtor credibly testified that the amount of child support is variable, but that the Schedules are as accurate as he can estimate: his son has a medical condition, and the family court agreement is one that requires him to pay a set amount to Ms. Vosika for child support each month and to pay 50% of various activities and other expenses upon presentation of these statements from Ms. Vosika. This procedure produces a different obligation each month and requires the constant exchange of information between the parties, made more difficult by the fact that Ms. Vosika and the child live in Illinois.

*Feasibility of the plan, changes in circumstances since the filing of the case:*

a. Ms. Vosika claimed that the Debtor had not met his burden of proof as to the

6

        feasibility of the plan, given that the Debtor had lost his job almost immediately after filing the bankruptcy case, and had filed schedules which showed changes in circumstances arising from that change.

    b. The Debtor testified that he has recently remarried, that he was underemployed at the time of filing, and was laid off just after filing, making it more difficult to remain current in all payments required by the Chapter 13 plan, including ongoing child support, more difficult. He testified that after he lost his job, he immediately obtained a job working at his non-filing spouse's place of employment. He and his non-filing spouse have made specific changes to their budget to reduce costs in an effort to fund the payments required by the plan.

19. No evidence was presented indicating that the mortgage creditors are currently pursuing collection actions against Ms. Vosika.

20. At the conclusion of the hearing October 17, 2013, the Court inquired as to the prepetition support arrears to Ms. Vosika. She was unable at that time to verify the amount due, so that the Court requested that she file a Proof of Claim to allow the amount to be part of the consideration of the Court. To allow time for the filing of Ms. Vosika's Proof of Claim, the Confirmation Hearing was continued to November 13, 2013.

21. Ms. Vosika filed a Proof of Claim on October 21, 2013, which reflected a priority claim of $5,449.00 and a general, unsecured claim of $326,265.00. The unsecured portion of this claim is equal to the sum of the full balance owed on the two mortgages against the Property for which Ms. Vosika is jointly obligated with the Debtor.

22. On November 7, 2013, the Trustee filed an Objection to Ms. Vosika's Proof of Claim indicating that the unsecured portion of the claim, without priority, in the amount of $326,265.00, should be disallowed, as the amount is contingent and/or unliquidated, and that the amount owed did not take into account the sale of the Property serving as security for the mortgages, so that the amount was incorrect. Trustee requested that the claim be allowed as priority for the prepetition domestic support arrears in the amount of $5,449.00. By consent of the parties, the matter was set for definite hearing on December 12, 2013.

23. On November 13, 2013, at the continued Confirmation Hearing, the parties requested a further continuance of the hearing, to coincide with the hearing on the Objection to Ms. Vosika's Claim, and the Confirmation Hearing was continued to December 12, 2013.

24. On November 14, 2013, Debtor filed a Joinder to Trustee's Objection to Ms. Vosika's Proof of Claim, agreeing that the prepetition arrears for domestic support in the amount of $5,449.00 should be allowed, but that the general unsecured claim should be disallowed as not yet established.

25. On December 3, 2013, an amended Chapter 13 Plan ("3rd Plan") was filed. The 3rd Plan provided improved treatment for the priority claim of Ms. Vosika in ¶ IV.C.1.a., but did not otherwise alter the plan terms.

26. On December 10, 2013 an amended Chapter 13 Plan ("4th Plan") was filed. The payment to the Trustee was slightly increased in ¶ III.A to allow for claims as filed, but did not otherwise alter the plan terms.

27. At the hearing on Objection to Creditor's claim, held December 12, 2013, the parties stipulated and entered one Exhibit, which includes all family court documents relating to the parties.

28. At the continued confirmation hearing, held December 12, 2013, the parties announced that no further testimony or evidence would be provided to the Court on the Creditor's Objection to Confirmation.

29. The Debtor filed an amended plan January 2, 2014 to provide for the surrender of a vehicle, which resulted in a decrease in the proposed Trustee payment, and to provide for payment of additional attorney's fees to Debtor's counsel.

CONCLUSIONS OF LAW

I. *Confirmation of the Debtor's Chapter 13 Plan*

The Debtor bears the burden of proof as to confirmation of the plan. In determining whether the plan was filed in good faith, the Court must examine "the totality of the circumstances to determine whether there has been an abuse of the provisions, purpose, or spirit of Chapter 13 in the proposal of the plan." In re McClure, C/A No. 12-05965-JW, slip op. at 3 (Bankr. D. S.C. Jan. 17, 2013), citing In re Namie, C/A No. 08-02192, slip op. (Bankr. D. S.C. Aug. 5, 2008), Neufeld v. Freeman, 794 F.2d 149, 152 (4th Cir. 1986), and Deans v. O'Donnell, 692 F.2d 968, 972 (4th Cir. 1982). The Court finds the Debtor's testimony to be credible in response to the allegations of bad faith by Ms. Vosika. In particular, the Court finds that the pre-petition conduct of the Debtor was in good faith and that his actions in filing a Chapter 13 to protect him when he could not sell the Property were not in bad faith.

The errors in the initial disclosures were *de minimus* and have been explained to the satisfaction of the Court. The combination of the changing amount of the child support obligation, the changing of jobs, the creation of a relatively new household and the ongoing efforts of the Debtor to reduce his household expenses, created a fact pattern requiring several amendments to the schedules, which indicate his continuing efforts to act in good faith in his

9

disclosures to the Court. The Debtor has met his burden of proof as to his good faith in the filing of the petition and the plan(s). The Court denies the Objection to Confirmation of Plan by Ms. Vosika on those grounds.

As to the feasibility of the plan, the Court further finds that the Debtor's testimony was credible as to his ongoing intent to maintain all payments due pursuant to the plan and his efforts to modify his budget in order to meet those requirements. The Debtor has met his burden of proof as to the feasibility of the plan(s). The Court denies the Objection to Confirmation of Plan by Ms. Vosika on those grounds.

In as much as the Amended Plan filed January 2, 2014 did not adversely affect Ms. Vosika or other creditors, the Court finds that the Amended Plan complies with the provisions of Chapter 13 (11 U.S.C. § 1301 et seq.), and with all other applicable provisions of Title 11 of the United States Code and that all fees and charges to be paid before confirmation have been paid.

**II.**     *Objection to Ms. Vosika's Claim*

The parties stipulated at the hearing that if the Court determines that Ms. Vosika's claim is contingent and/or unliquidated, the Objection to Claim should be sustained and her claim should be allowed only to the extent of the priority claim. The parties further stipulated that upon determination or liquidation of the actual liability owed by the Debtor, Ms. Vosika could amend the general, unsecured portion of her proof of claim anytime within two (2) years of the date of this Order, and that the Trustee and the Debtor would be barred from objecting to the claim on laches grounds.

Ms. Vosika argued that the unsecured claim was not contingent or unliquidated and should be allowed as filed, as the amount due is readily determined by the mortgage holders, and the Debtor is required by the family court orders to maintain the payments so that the full debt is

due. It appears that Ms. Vosika has confused the debt owed to directly to her by virtue of the hold harmless agreement and the debt owed jointly by her and the Debtor to the mortgage holders, in arguing that the debt is easily ascertainable.

The Trustee and Debtor argued that, until sale of the subject property has taken place, the Court cannot accurately estimate the amount of the claim pursuant to 11 U.S.C. § 502(c)(1). The claim is therefore unliquidated as to Ms. Vosika and contingent upon the future event of the disposition of the Property, which will allow the parties to determine whether any debt is owed by the Debtor to Ms. Vosika after payment of the proceeds to the mortgage creditors.

This Court finds that the parties' agreement, as expressed in the Consent 362 Order, anticipated the disposition of the Property and until such time, the claim is not easily ascertainable and is thus unliquidated. If the Property is sold for an amount exceeding the mortgage balance or at a price acceptable to Ms. Vosika, she will have no unsecured claim. Under the circumstances of this case, other creditors should not be delayed by a denial of confirmation and payment as long as Ms. Vosika is allowed a reasonable opportunity to return to the Court, without prejudice, to assert her claim if the Property is sold for less than the mortgage balance. Therefore, the full balance owed to the mortgage holder is not an accurate estimate of the claim. The Court accepts the terms agreed upon by the parties which would enable Ms. Vosika to amend the general unsecured portion of her claim within two years of the date of this order after establishment of the actual liability.

## CONCLUSION

For the reasons stated herein,

**IT IS ORDERED THAT:**

1. The Objections to Plan on the grounds of lack of good faith and feasibility are

hereby denied.

2.  The Chapter 13 Trustee's Objection to the Claim of Ms. Vosika is sustained, and the claim of Ms. Vosika is hereby allowed as priority for the prepetition domestic support arrears, in the amount of $5,449.00, and the general unsecured claim as filed is denied. The general unsecured portion of the claim can be amended at anytime within two (2) years of the date of this Order, to assert the actual liability owed by Debtor to Ms. Vosika. If the amended proof of claim is filed within that time frame, the Trustee and Debtor are barred from raising an objection to the amended general unsecured claim on laches grounds.

3.  The plan is confirmed.[1]

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**02/19/2014**



US Bankruptcy Judge
District of South Carolina

Entered: 02/19/2014

---

[1] The Debtor shall not incur indebtedness nor sell, encumber, or otherwise transfer any interest in estate property outside the ordinary course of business without approval of the Court. The Court hereby values secured claims and voids liens as set forth in the confirmed plan or as established by separate order to the extent permitted by 11 U.S.C. §§ 506 (a), 506(d), 1325(a), and applicable law. To the extent applicable, pursuant to 11 U.S.C. § 522(f)(1)(A) and/or (B), the Court hereby finds that the security interests to be avoided as set forth in the confirmed plan or by separate order impair an exemption to which the debtor would otherwise be entitled under 11 U.S.C. § 522(b) and South Carolina Code § 15-41-30 and are, therefore, avoided.